IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KENNETH DUKE                                              PLAINTIFF

VERSUS                          CIVIL ACTION NO. 5:04cv322DCBJMR

JACOB CARTLIDGE, Individually, and as Sheriff of
Sharkey County, Mississippi; SHARON DUCKWORTH,
Individually, and as Deputy Sheriff Sharkey County;
COUNTY OF SHARKEY, MISSISSIPPI; WALLACE NEWSOME,
Individually, and as County Supervisor
for District No. 1; D.W. JOHNSON, Individually, and
as County Supervisor for District No. 2;
ELDRIDGE WALKER, Individually, and as County Supervisor
for District No. 3; JOE KING, Individually, and as
County Supervisor for District No. 4; WILLIE SMITH,
Individually, and as County Supervisor for
District No. 5                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Deputy Sharon Duckworth's Motion for Summary Judgment [**docket entry no. 32 & 36**], Sharkey County, Mississippi's Motion for Summary Judgment [**docket entry no. 34**], Deputy Duckworth's Motion to Strike [**docket entry no. 44**], and Deputy Duckworth's Motion to Dismiss for Failure to Prosecute [**docket entry no. 58**]. Having reviewed the motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS AND PROCEDURAL HISTORY[1]

_____

[1]When ruling on a motion for summary judgment, the Court views all facts in the light most favorable to the nonmoving party.

On the night of August 22, 2002, Brenda Stevens, Pennye Ward,[2] and Sam Dobbins arrived at Ms. Stevens's home in Sharkey County, Mississippi to find it ransacked.  (Ward dep. 8-13, Sharkey County Mot. Summ. J. Ex. I; Dobbins dep. 8-10, Sharkey County Mot. Summ. J. Ex. K.)  Kenneth Duke, who had been drinking, was sitting in Stevens's house (which was typically left unlocked) with the door locked.  Since Stevens had left her keys at home with the door unlocked, Duke had to open the door for them.  (Duke dep. 62-65, Sharkey County Mot. Summ. J. Ex. M.)  Duke and Stevens then went outside to talk.  Duke took his pistol with him.  Ward and Dobbins walked outside as well and heard Duke and Stevens arguing.  (Dobbins dep. 9.)

During this argument and without warning, Duke's pistol accidentally fired.  (Duke dep. 78-79, 86.)  Ward and Dobbins ran inside and called the sheriff's office.  (Ward dep. 9-10; Dobbins dep. 10-11.)  While Ward was still on the telephone with the dispatcher, Stevens entered the house crying and carrying Duke's pistol.  (Ward dep. 10.)  Duke had given the handgun to Stevens after the accidental discharge and apologized.  (Duke dep. 85.)  Duke then stood outside the front door for several minutes asking Stevens to speak with him.  When Ward informed Duke that "the law would be there any time," he left in his truck.  (Ward dep. 15-16.)

---

[2]Since these events transpired, Pennye Ward and Sam Dobbins have married.  The Court will refer to Mrs. Dobbins as Ms. Ward.

Sharkey County Deputy Sheriffs Sharon Duckworth and Stanley Coleman responded.  Coleman left to search the surrounding area for Duke while Duckworth questioned Stevens, Ward, and Dobbins on the front porch.  (Ward dep. 19.)  While on the porch, Dobbins saw Duke walking toward the house and chased him into a nearby cotton field. After Dobbins caught Duke, he tackled him and a fight ensued. (Duke dep. 94-100.)  Duke managed to gain the advantage and pinned Dobbins to the ground.  Duke testified in his deposition that he hit Dobbins twice, but only "to keep [Dobbins] from hitting me in the face."  (Duke dep. 101.)  Deputy Duckworth ran into the field and allegedly ordered Dobbins to "freeze," which Duke never heard. Duckworth then drew her service revolver and shot Duke in his left shoulder.  (Duke dep. 102.)

After the shooting, Duckworth called for an ambulance.  Duke was transported to the local hospital and treated for a gunshot wound to his left shoulder.  On September 9, 2002, after being released from the hospital, Duke was arrested by Deputy Coleman for kidnapping, burglary, resisting arrest, simple assault, and malicious mischief pursuant to a facially valid arrest warrant.[3]

---

[3]Plaintiff has not alleged any impropriety in the issuance of the arrest warrant.  Similarly, Duke has not attempted to show the warrant to be invalid.

Resisting arrest was the only charge brought by Sharon Duckworth.  Deputy Stanley Coleman was the affiant for the kidnaping and burglary charges.  Brenda Stevens was the affiant for the malicious mischief charge.  Sam Dobbins was the affiant for the

(Sharkey County Mem. Auth. Summ. J. 14.)   These charges all resulted from the events that transpired on October 22, 2002.   To date, the charges are still pending.[4]   Neither side has offered any evidence to explain why there has been such a long delay in Duke's criminal trial on these charges.

On November 14, 2004, the plaintiff filed this action in the Northern District of Mississippi against Sharkey County, Mississippi and Sharon Duckworth, in both her individual and official capacities.[5]   This action was transferred to this Court from the Northern District of Mississippi on December 15, 2004 [**docket entry no. 1**].   Pursuant to 28 U.S.C. § 1983, Duke's complaint seeks damages from both defendants for alleged violations of his constitutional rights under the Fourth and Fourteenth Amendments.   (Compl. ¶¶ 26-28.)   Specifically, Duke's § 1983 claims pertain to Duckworth's alleged use of excessive force and Sharkey County's alleged custom of allowing such acts.   Duke also complains that his constitutional rights have been violated by the ongoing

_____

assault charge.

[4]While the abstention doctrine espoused in <u>Younger v. Harris</u>, 401 U.S. 37 (1971) and progeny could possibly apply under these facts, neither party has raised the issue.   Since substantial discovery has been conducted and neither party has moved for a stay, the Court will proceed with the current motion.

[5]Duke also named the sheriff of Sharkey County and the board of supervisors in both their official and individual capacities. These defendants were dismissed pursuant to an order by the Court dated October 5, 2005 [**docket entry no. 23**].

malicious prosecution of the September 9, 2002 charges. Furthermore, Duke seeks damages against both defendants for the common law torts of assault, battery, false arrest and imprisonment, malicious prosecution, and outrage. (Compl. ¶¶ 30-34.)

## DISCUSSION

## I.   Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[6]

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To

---

[6]A contested fact is "material" when it has the potential to change the outcome of the case. Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Id.

overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the

province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. Duke's Claims Against Sharkey County, Mississippi

### A. Plaintiff's § 1983 Claims under Monell v. City of New York Dep't of Social Servs., 436 U.S. 658 (1978), Must Fail

Duke claims that the acts, customs, and policies of the Sharkey County Sheriff's Office amounted to deliberate indifference to his constitutional rights and proximately caused his injuries. (Compl. ¶¶ 21-22.) Specifically, Duke alleges that (1) "Sharkey County 'instituted and supported customs and policies' allowing excessive force," and (2) Sharkey County, through its sheriff, failed to adequately train and supervise Deputy Duckworth. (See Comp. ¶ 21.; Mem. Auth. Summ. J. 8.)

Under 28 U.S.C. § 1983, the United States Supreme Court has held that "[m]unicipal liability, based on the actions of city officials, exists only where it can be shown that the officials acted in accordance with an official government policy or firmly

entrenched custom." Monell v. City of New York Dep't of Social Servs., 436 U.S. 658, 694 (1978).  A municipality cannot be liable under § 1983 pursuant to the theory of respondeat superior liability alone.  City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988).  "[A] municipality cannot be held liable [pursuant to § 1983] solely because it employs a tortfeasor...."  Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998)(quoting Monell, 436 U.S. at 691).  Thus, to hold a municipality liable under § 1983 for the actions of its officials, the plaintiff must prove his injury was proximately caused by either:  (1) the official policy of the municipality, (2) the edicts and acts of a final policymaker, which can fairly be said to represent the official municipal policy, or (3) the widespread practice of the municipality that is so permanent and well settled as to constitute a "custom" or written law.  Monell, 436 U.S. at 694; see also Praprotnik, 485 U.S. at 127.

In the Fifth Circuit, "Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)."  Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002).  "[A] plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Bd. of County Comm'r v. Brown, 520 U.S. 397,

404 (1997).   In Pineda, the Fifth Circuit stated that to prove "municipal liability in the absence of a 'smoking gun' [there are] two paths of proof:"

>    1.   A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
>    2.   A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Pineda, 291 F.3d at 328 (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)).

Therefore, for Duke to prevail on his Monell claims against Sharkey County, he must prove that his constitutional rights were violated by a municipal employee's conduct, and that conduct occurred because of: (1) an official policy statement, ordinance or regulation of Sharkey County, or (2) a widespread practice or custom of Sharkey County.   See Praprotnik, 485 U.S. at 122 ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").   To prove the existence of a custom, Duke must show a "persistent and widespread practice" of

-9-

Sharkey County employees inflicting, on other occasions, the specific constitutional violations that he alleges; "one act is not itself a custom." Pineda, 291 F.3d at 329 (citing Piotrowski v. City of Houston, 237 F.3d 567, 581 (5th Cir. 2001).

      1.   Plaintiff has Failed to Show Any Policy or Custom of Sharkey County Authorizing Excessive Force

Mere allegations are insufficient to overcome a motion for summary judgment; rather, the nonmoving party must show with "significant probative evidence" the existence of a genuine issue of material fact. Anderson, 477 U.S. at 250; Conkling, 18 F.3d at 1295. Duke has the burden of showing the existence of a Sharkey County policy or custom authorizing, condoning, or instructing use of excessive force by its deputies. With regard to a "policy of excessive force," Plaintiff has failed to point to any official policy, such as a regulation or ordinance, that authorizes its deputies to use excessive force. In fact, Duke acknowledges the existence of the Sharkey County Sheriff Department's official written policy establishing the parameters for the use of deadly force by a deputy. (Resp. to Duckworth Mot. Summ. J. 3–4. & Ex. D.) Sharkey County's "Use of Firearms/Deadly Force Policy" closely follows the precedent established by the United States Supreme Court in Tennessee v. Garner, 471 U.S. 1 (1985) and progeny; therefore, the policy itself cannot be said to authorize unconstitutional behavior.

Moreover, Plaintiff has failed to establish the existence of

a "widespread practice" or custom of the Sharkey County Sheriff Department authorizing the use of excessive force. Duke has provided no evidence of <u>any</u> other claims of excessive force lodged against Sharkey County deputies. A single instance of excessive force is insufficient to satisfy the predicate "pattern of conduct" necessary to establish a municipal custom. See <u>Pineda</u>, 291 F.3d at 329.

Since Duke has failed to show any evidence of a Sharkey County policy or custom authorizing the use of excessive force, he cannot make a prima facie case for § 1983 liability under <u>Monell</u>. Thus, Sharkey County is entitled to summary judgment. See <u>Celotex</u>, 477 U.S. at 322.

      2.  <u>Plaintiff has Failed to Establish the Necessary Elements of his Failure to Train Claim</u>

The Supreme Court has held that "failure to train" claims are cognizable under § 1983. See <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808 (1985). To prevail on such a claim, the plaintiff must prove that the municipality's failure to train resulted from deliberate indifference by the municipality (or their policymakers) to the rights of the citizens with whom the officers regularly interact. <u>Harris</u>, 489 U.S. at 389. "To satisfy the deliberate indifference prong [in a failure to train case], a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the

training is 'obvious and obviously likely to result in a constitutional violation.'" <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003), <u>quoted in</u> <u>Estate of Davis v. City of North Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005).  A single incident of inadequate training is insufficient to warrant a finding of deliberate indifference; rather, the plaintiff must show a pattern of similar violations to establish such a finding.  <u>Estate of Davis</u>, 406 F.3d at 382-83.  The plaintiff must also prove the existence of a direct causal link between the inadequate training and the plaintiff's constitutional deprivation.  <u>Harris</u>, 489 U.S. at 385-86.

Duke has offered no evidence to the Court which would create a question of fact regarding Sharkey County's alleged deliberate indifference.  Plaintiff has shown nothing to indicate that Deputy Duckworth was inadequately trained.  Without some competent evidence illustrating a failure by Sharkey County to adequately train its deputies, Duke's allegation of deliberate indifference must fail.  Due to the absolute vacuity of evidence concerning deliberate indifference, Sharkey County is entitled to summary judgment on Duke's failure to train claim.

B.   <u>Plaintiff's Common Law Tort Claims Against Sharkey County Must Fail</u>

To the extent that Duke has alleged common law tort claims against Sharon Duckworth in her official capacity as a deputy

-12-

sheriff of Sharkey County,[7] these claims are properly construed as having been made directly against Sharkey County under the Mississippi Tort Claims Act ("MTCA"), Mississippi Code Section 11-46-1 et seq.. See Miss. Code Ann. § 11-46-5(1) ("[T]he immunity of the state and its political subdivisions from claims for money damages arising out of . . . the torts of their employees while acting within the course and scope of their employment is hereby waived . . . ."); Miss. Code Ann. § 11-46-7(2) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.") The MTCA is the exclusive remedy available to plaintiffs seeking money damages from the state or its political subdivisions.  Miss. Code Ann. § 11-46-7.

    1.   Statute of Limitations for MTCA Claims

As an initial matter, Sharkey County argues that Duke's MTCA claims are barred by Mississippi's one-year statute of limitations imposed on such claims.  See Miss. Code Ann. § 11-46-11(3).  While it is true that the one-year statute of limitations applies to Duke's claims, the defendant overlooks the operation of the Act's tolling provision.  See Miss. Code Ann. § 11-46-11.  Moreover, Sharkey County entered into a tolling agreement with Duke that expressly states, "Plaintiff and Defendant agree that the statute

_____

[7]It is undisputed that Deputy Duckworth was acting in the course and scope of her employment when the incident occurred. (See Compl. ¶ 17.)

of limitation[s] applicable to all of Plaintiff's claim[s] shall be tolled from August 22, 2003 for 95 days through November 25, 2003 pursuant to Section 11-46-11 of the Mississippi Code Annotated." (Pl. Resp. Supp. Mot. Summ. J. Ex. A.)   Since Duke filed his complaint on November 14, 2003, the action was timely filed. Therefore, Defendant's claim is without merit.

     2.   <u>False Arrest and Imprisonment</u>

     Duke was arrested on September 9, 2002 for kidnaping, burglary, resisting arrest, simple assault, and malicious mischief. The arrest was made by Deputy Coleman pursuant to a facially valid warrant.   To establish a claim of false arrest or false imprisonment, a plaintiff must prove that the defendant caused him "to be arrested falsely, unlawfully, maliciously, and without probable cause." <u>Croft v. Grand Casino Tunica, Inc.</u>, 910 So. 2d 66, 75 (Miss. Ct. App. 2005) (citing <u>City of Mound Bayou v. Johnson</u>, 562 So. 2d 1212 (Miss. 1990)). <u>See also</u> <u>Parker v. Miss. Game & Fish Comm'n</u>, 555 So. 2d 725, 728-79 (Miss. 1989).   Where probable cause exists for an arrest, there can be no false arrest claim.   <u>Price v. Roark</u>, 256 F.3d 364, 369 (5th Cir. 2001). Plaintiff has failed to prove (or even allege) that the arrest warrant issued for him lacked probable cause or was otherwise invalid.   Since the warrant was supported by probable cause, the arrest was proper.   Accordingly, Sharkey County is entitled to summary judgment on Plaintiff's false arrest and imprisonment

claim.

3.  <u>Malicious Prosecution</u>

A claim of malicious prosecution accrues on the day the criminal prosecution is terminated in the plaintiff's favor. <u>City of Mound Bayou</u>, 562 So. 2d at 1217. Consequently, where the criminal prosecution has yet to be terminated in the plaintiff's favor, malicious prosecution is not a viable claim. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994); <u>Joiner Ins. Ag., Inc. v. Principal Cas. Ins. Co.</u>, 684 So. 2d 1242, 1245 (Miss. 1996). It is undisputed that the criminal charges against Duke are still pending.

Plaintiff argues, however, that he is entitled to pursue his malicious prosecution claim because Sharkey County has yet to bring him to trial even though over thirty months have passed since his arrest. Without any further elaboration, Duke states, "attempts [to prosecute him] would now be barred by applicable speedy trial law." (Br. Resp. Summ. J. 4.) While an <u>attempt</u> to prosecute Duke in state court may be barred by either the Constitution or Mississippi Code Section 99-17-1, this potential defense does not automatically expunge the charges which are still pending against him.

Since the plaintiff's claim of malicious prosecution has yet to accrue, the municipal defendant is entitled to summary judgment

on that claim.[8]

    4.   <u>Assault and Battery</u>

To establish a prima facie case of assault, the plaintiff must prove that (1) the defendant intended to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such a contact, and (2) the plaintiff was put in such an imminent apprehension. <u>Whitten v. Cox</u>, 799 So. 2d 1, ¶ 7 (Miss. 2000). "A battery goes one step beyond an assault in that a harmful contact actually occurs." <u>Id.</u> Therefore, Duke's assault and battery claims resulting from the gunshot wound received from Deputy Duckworth merge into the singular claim of battery.

Mississippi Code Section 11-46-9(c) states that a government entity shall not be liable for any claim,

> [A]rising out of any act or omission of an employee . . . engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in disregard of the safety and well-being of any person ***not*** *engaged in criminal activity at the same time of the injury.*

Miss. Code Ann. § 11-46-9(c) (emphasis added).

For Sharkey County to receive this immunity, there must be a causal nexus between the plaintiff's criminal activity and the tortfeasor's wrongdoing. <u>Estate of Williams v. City of Jackson</u>, 844 So. 2d 1161, 1165 (Miss. 2003). Section 11-46-9 does not

---

    [8]Also, the Court notes that the existence of probable cause is fatal to the plaintiff's malicious prosecution claim. <u>See</u> <u>Roussel v. Robbins</u>, 688 So. 2d 714, 721 (Miss. 1996).

protect a municipality where "the fact that the [plaintiff] is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which liability would otherwise arise." City of Jackson v. Perry, 764 So. 2d 373, 379 (Miss. 2000) (refusing to extend Section 11-46-9 immunity to city where officer had car accident with unlicensed driver; the plaintiff's "criminal activity" did not cause officer's conduct).

Directly at issue is (1) whether Duke was engaged in criminal activity at the time Deputy Duckworth allegedly assaulted him, and (2) whether Duke's criminal activity caused Deputy Duckworth to assault him.  Moreover, for Duke to prevail, he must prove that Duckworth was acting with reckless disregard for his safety and well-being.  Foster v. Noel, 715 So. 2d 174, 178-79 (Miss. 1998). Reckless disregard is "a higher standard than gross negligence and 'embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" City of Jackson v. Powell, 917 So. 2d 59, 71 (Miss. 2005) (quoting Collins v. Tallahatchie County, 876 So. 2d 284, 287 (Miss. 2004)).

Duke was charged with the assault of Sam Dobbins.  The fight giving rise to this charge was still occurring when Deputy Duckworth shot Duke with her service revolver.  It is undisputed that Duke was engaged in criminal activity when Duckworth shot him. Duke admitted that there was an ongoing misdemeanor disturbance at

the time of the shooting.[9] (See Resp. Summ. J. 5.)   Moreover, Deputy Duckworth shot Duke because of this ongoing crime.   The plaintiff has not offered any evidence to create a genuine issue of material fact as to any alternative motivation which caused Duckworth to fire her weapon.

Since Duke was engaged in criminal activity at the time the alleged battery occurred, and inasmuch as criminal activity caused Duckworth's alleged wrongdoing, the MTCA provides Sharkey County with immunity on Duke's battery claim.   Therefore, Sharkey County is entitled to summary judgment on that claim.

## III. Duke's Claims Against Deputy Sharon Duckworth

A.   Deputy Duckworth Is Entitled to Summary Judgment on Duke's State Law Claims[10]

The MTCA provides, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties . . . ."  Miss. Code Ann. § 11-46-7(2). In paragraph seventeen of his complaint, Duke alleges, "Defendant Duckworth at all times while using excessive force was an employee,

---

[9]The Mississippi Supreme Court makes no distinction between misdemeanor offenses and felony offenses when applying Mississippi Code Section 11-46-9.  See Estate of Williams, 844 So. 2d at 1165.

[10]As mentioned, infra, all claims against Deputy Duckworth in her "official capacity" should properly be construed as claims directly against Sharkey County.  See Womble v. Singing River Hosp., 618 So. 2d 1252, 1261 (Miss. 1993) ("[S]uing public officials in their official capacities is tantamount to suing the State or its affiliated entities themselves . . . .").  See also Miss. Code Ann. § 11-46-7(1) (stating that the MTCA is the exclusive remedy for claims against a government employee).

agent, or servant of the Sharkey County Sheriff's Department and was acting in the course and scope of her employment . . . ." (Compl. ¶ 17.)  Thus, it is undisputed that Duckworth was within the scope of her employment when she shot Duke.[11]

Plaintiff's allegation that Duckworth was acting in the scope of her employment is fatal to his state law tort claims against her in her individual capacity.  In <u>Duncan v. Chamblee</u>, a student sued his teacher, alleging that the teacher inflicted various intentional torts upon him by using excessive corporal punishment. 757 So. 2d 946, 946-47 (Miss. 1999).  The Mississippi Supreme Court upheld the trial court's dismissal in favor of the teacher and stated, "[Plaintiff's] complaint alleges that [the teacher was] acting in the scope of her employment. . . . Thus, by [the plaintiff's] own allegations, the teacher was acting within the course and scope of her employment."  <u>Id</u>. at 950 (quoting Miss. Code Ann. § 11-46-7(2)).

The well established doctrine of judicial estoppel prevents Duke from now claiming that Deputy Duckworth was acting outside her scope of employment at the time of the shooting.[12]  <u>Dockins v.</u>

_____

[11]Furthermore, the MTCA raises a rebuttable presumption that an individual is acting within the scope of her employment when the act complained of occurred "within the time and at the place of her employment . . . ."  Miss. Code Ann. § 11-46-5.

[12]Even assuming, <u>arguendo</u>, that the doctrine of judicial estoppel does not apply and Duke is allowed to change his initial position at this late stage in the litigation, it would be irrelevant.  All the claims against Duckworth, if construed against

-19-

Allred, 849 So. 2d 151, 155 (Miss. 2003) ("Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation."). See generally New Hampshire v. Maine, 532 U.S. 742 (2001) (unanimously applying the doctrine of judicial estoppel).

B.   Deputy Duckworth is not Entitled to Summary Judgment on Duke's § 1983 Excessive Force Claim

Duke claims that Deputy Duckworth violated his Fourth Amendment right to be free from unreasonable seizures, as incorporated to the states by the Fourteenth Amendment. Specifically, Duke alleges that Deputy Duckworth used excessive force when she shot him. (Compl. ¶ 20.) Duke seeks redress for his injuries pursuant to 28 U.S.C. § 1983. Deputy Duckworth, however, claims she deserves qualified immunity and is therefore entitled to summary judgment.

"A Court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

_____

her individual rather than official capacity, would be subject to the one-year statute of limitations found in Mississippi Code § 15-1-35. Since the cause of action for each of these intentional torts occurred on either October 22, 2002 or September 9, 2002 and the complaint was filed on November 13, 2003, these claims would all be time barred. The tolling provision of Mississippi Code Section 11-46-11 is inapplicable to claims falling outside the MTCA's scope.

right?" <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991), <u>quoted</u> <u>in</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the plaintiff's allegations, taken as true, would violate a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time the challenged conduct occurred.  <u>Saucier</u>, 533 U.S. at 201.  To determine if a right is clearly established, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987), <u>quoted</u> <u>in</u> <u>Saucier</u>, 533 U.S. at 202.  This inquiry must be evaluated in the specific factual context of each particular case.  <u>Brousseau</u> <u>v. Haugen</u>, 543 U.S. 194, 199 (2004) (<u>per</u> <u>curiam</u>).  If the particular right violated was clearly established, the next step is to determine "whether the conduct of the defendant was objectively unreasonable in light of that then clearly established law." <u>Felton v. Polles</u>, 315 F.3d 470, 477 (5th Cir. 2002), <u>quoted</u> <u>in</u> <u>Tarvers v. City of Edna</u>, 410 F.3d 745, 750 (5th Cir. 2005).  A law enforcement officer who makes a mistake and uses more force to restrain a suspect than allowed under Fourth Amendment may nevertheless be entitled to immunity if the mistake is reasonable. <u>Saucier</u>, 533 U.S. at 205.

     1.   <u>Taken in the Light Most Favorable to Duke, He has</u>
         <u>Alleged a Violation of his Fourth Amendment Rights</u>

Claims of excessive force "should be analyzed under the Fourth

Amendment and its 'reasonableness' standard . . . ." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).  In order to state a claim for excessive force under the Fourth Amendment in this circuit, the plaintiff must show "(1) an injury which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-34 (5th Cir. 1996) (citing <u>Spann v. Rainey</u>, 987 F.2d 1110, 1115 (5th Cir. 1993)).  Three factors are of particular importance in determining "objective reasonableness": (1) the severity of the crime, (2) whether the plaintiff posed an immediate threat to the safety of the officer or others, and (3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest.  <u>Gutierrez v. City of San Antonio</u>, 139 F.3d 441, 447 (5th Cir. 1998).  It is objectively unreasonable to use deadly force unless the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  <u>Flores v. City of Palacios</u>, 381 F.3d 391, 399 (5th Cir. 2004).

It is undisputed that Duke suffered a gunshot wound from Deputy Duckworth on October 22, 2002; therefore, the first two elements needed to establish an excessive force claim are clearly met.  Thus, the Court proceeds to the third element, whether the officer's use of deadly force was "objectively reasonable."  It is undisputed that immediately before being shot by Deputy Duckworth,

Duke was on top of Sam Dobbins.  The issue of whether Duke merely was pinning Dobbins to the ground or whether Duke was pummeling him unnecessarily is, however, a heavily contested question of fact. At the summary judgment phase, any disputed issues of fact must be resolved in favor of the nonmoving party.  See Saucier, 533 U.S. at 201.  Accordingly, the Court must take Duke's account of the events as true.  If Duke was merely pinning Dobbins to the ground in self-defense, there was no "significant threat of death or serious physical harm" that justified the use of deadly force.  Moreover, no evidence has been presented to the Court that indicates Duke was attempting to evade capture or was resisting arrest.  Since genuine issues of material fact exist as to whether the use of deadly force was objectively reasonable, Duke has sufficiently alleged a constitutional violation.  See Flores, 381 F.3d at 399.  Therefore, the Court must continue to the second step of the qualified immunity analysis.

> 2.  Duke's Right to be Free From the Excessive Application of Deadly Force, Under these Particular Facts, Was Clearly Established

The particular facts surrounding the shooting must be taken into account when determining whether Deputy Duckworth's conduct was unreasonable in light of clearly established law.  See Tarvers, 410 F.3d at 753.  The inquiry is essentially this: Would a reasonable officer, in the same circumstances as Deputy Duckworth, recognize that his/her conduct violates Duke's Fourth Amendment

rights?   At the time the shooting occurred, it was clearly established that Duke had a right to be free from the use of deadly force unless he posed a significant threat of serious physical harm or death to others.[13]   Whether Duke posed a significant threat of serious physical harm to anyone is a question of fact.   Duke has presented evidence that he was merely holding Dobbins down, while Deputy Duckworth has presented evidence that Duke was repeatedly striking Dobbins with what appeared to be a knife.   When viewed in the light most favorable to Duke, there was no threat of serious physical harm to Dobbins; therefore, Deputy Duckworth's use of deadly force was objectively unreasonable.   As such, Deputy Duckworth is not entitled to qualified immunity at this stage in the litigation.

**IV.  Deputy Duckworth's Motion to Dismiss & Motion to Strike**

On July 18, 2006, Deputy Duckworth filed a Motion to Dismiss for Failure to Prosecute and for Disobedience to Court Orders [**docket entry no. 58**].   Throughout this litigation, Duke has had a considerable amount of trouble obtaining counsel.   Initially, his attorney was not licensed in Mississippi and refused to comply with

---

[13]Indeed, in this specific case, Deputy Duckworth was aware of the constitutional requirements concerning the use of deadly force. The Sharkey County Sheriff's Department had a "Use of Firearms/Deadly Force Policy" that closely followed the strictures set in place by the United States Supreme Court in <u>Tennessee v. Garner</u> and progeny.

the Uniform Local Rule's pro hac vice admission requirements.  On April 12, 2006, the Court issued an order requiring Duke to notify it by April 21, 2006 whether he would obtain new counsel or proceed pro se.  At the May 22, 2006 status conference before Magistrate Judge Roper, Duke appeared without counsel and was again informed that he must notify the Court of his decision to proceed pro se or with counsel.  Judge Roper set a July 1, 2006 deadline for this notification and scheduled another status conference for July 20, 2006.  Although Duke informed the Court on June 2, 2006 of his desire to obtain new counsel, he elected to proceed pro se at the July 20, 2006 status conference.

Deputy Duckworth is correct in her position that the Court has the inherent power to dismiss a lawsuit due to a party's disregard for deadlines or failure to prosecute.  See generally Link v. Wabash R.R. Co., 370 U.S. 626 (1962).  Such a decision is within the discretion of the Court and is not statutorily or otherwise mandated.  Dismissal due to missed deadlines is an extraordinary remedy and should only be granted where there are aggravating factors justifying dismissal.  Here, Duke did not miss the July 1, 2006 deadline set by Judge Roper; rather, the only deadline missed was the April 21, 2006 deadline.  The defendant waited approximately three months before filing her motion to dismiss.  Moreover, the defendant has failed to show that she suffered any prejudice due to the missed deadline.  Dismissal due to a party's

tardiness on one deadline, and where the moving party suffered no prejudice is unwarranted.[14]

On January 26, 2006, Deputy Duckworth filed a Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment [**docket entry no. 44**].  Duke, who at this time was represented by counsel, was one week late in filing his Response to Deputy Duckworth's Motion for Summary Judgment.  Again, Deputy Duckworth failed to point to any prejudice resulting from this one week delay.  Deputy Duckworth's motion to strike is therefore denied.

**CONCLUSION**

Defendant Sharkey County is entitled to summary judgment on both Plaintiff's § 1983 and MTCA claims.  Defendant Duckworth is entitled to summary judgment on Plaintiff's state tort law claims against her.  Defendant Duckworth is not, however, entitled to summary judgment on Plaintiff's § 1983 excessive force claim.  Accordingly,

IT IS HEREBY ORDERED that Defendant Sharkey County's Motion for Summary Judgment [**docket entry no. 34**] is **GRANTED.**

IT IS FURTHER ORDERED that Defendant Duckworth's Motion for Summary Judgment [**docket entry no. 32 & 36**] is **GRANTED in-part** and **DENIED in-part**.

IT IS FURTHER ORDERED that Defendant Duckworth's Motion to

---

[14]The plaintiff should be warned, however, that the Court does not look favorably upon missed deadlines.

Strike [**docket entry no. 44**] is **DENIED.**

IT IS FURTHER ORDERED that Defendant Duckworth's Motion to Dismiss [**docket entry no. 58**] is **DENIED.**

SO ORDERED, this the 25th day of September, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE